# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00134-CR

**Michael Patrick Kennedy, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2006-016, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

Michael Patrick Kennedy pleaded guilty to the crime of aggravated assault of a police officer. *See* Tex. Penal Code Ann. §§ 22.01(a) (defining assault), 22.02(a) (defining aggravated assault in relation to definition of assault found in article 22.01), 22.02(b)(2)(B) (West Supp. 2007) (specifying that aggravated assault is first-degree felony if committed against public servant performing his official duties). After Kennedy was arrested for the crime, the police obtained a warrant to search Kennedy's residence and seized various items from his property. Prior to trial, Kennedy filed a motion to suppress the evidence that was seized under the warrant. The district court denied the motion, and Kennedy pleaded guilty. In his first three issues on appeal, Kennedy argues that the district court erred by denying his motion because there was no probable cause to issue the warrant. In his fourth issue, he alleges that even if the warrant was supported by probable cause, some of the evidence obtained from his home was outside the scope of the warrant. In his

final issue, Kennedy argues that the district court erred by allowing the State, during its rebuttal, to make arguments that exceeded the scope of permissible argument. We will affirm the judgment of the district court.

## BACKGROUND

Late one night in March 2005, Officer Richard Kunz observed Kennedy speeding on I-35 and initiated a traffic stop. After Kennedy pulled his vehicle over to the side of the road and stopped his car, Kunz approached Kennedy's car. Although who initiated the shooting is disputed, it is undisputed that shortly after Kunz reached Kennedy's car, multiple shots were fired by both Kennedy and Kunz. During the exchange, Kennedy was shot three times, but Kunz was not injured.

In response to a call by Kunz, several police officers arrived on the scene, and Kennedy was arrested and taken into custody. After being arrested, Kennedy was charged with attempted capital murder. *See* Tex. Penal Code Ann. §§ 15.01 (West 2003) (explaining criminal attempt), 19.02 (West Supp. 2007) (defining murder), 19.03(a)(1)(providing that person commits capital murder if he "murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman").

Several days after Kennedy was arrested, a Texas Ranger prepared an affidavit for the purpose of obtaining a search warrant to search Kennedy's home. *See* Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2007) (requiring that sworn affidavit be filed when search warrant is requested); *see also id.* art. 18.01(a) (West Supp. 2007) (defining search warrant as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate").

2

Shortly after the affidavit was submitted, the reviewing judge issued a search warrant, and law-enforcement officers executed the warrant and seized various items from Kennedy's residence. Subsequent to the seizure and after being indicted, Kennedy filed a motion to suppress the seized items. In particular, Kennedy contended that the items should be suppressed because there was no probable cause to support the warrant, the information in the affidavit supporting the warrant was stale, the police did not properly establish the reliability and credibility of one of the sources of information mentioned in the affidavit, and the police seized items that were outside the scope of the warrant.

In early January 2006, a suppression hearing was held. After hearing testimony, the district court concluded that two types of items seized were beyond the scope of the warrant but denied the motion to suppress in regard to the remaining items. Further, the court found that the warrant was supported by probable cause, that "[t]here was reliability in the affidavit," and that the information in the affidavit was not stale.

Prior to the suppression hearing, Kennedy agreed to plead guilty to the crime of aggravated assault of a police officer but also agreed to leave the terms of the punishment "open." In other words, the court was free to impose any punishment allowable for the crime of aggravated assault of a police officer. In addition, Kennedy retained the right to appeal the district court's ruling on his motion to suppress if it ruled against him. *See* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006) (allowing criminal defendant to appeal conviction); *see also Young v. State*, 8 S.W.3d 656, 663 (Tex. Crim. App. 2000) (explaining that defendants may enter into conditional pleas).

3

Immediately after the court denied his motion to suppress, Kennedy pleaded guilty. Approximately two months later, in March 2006, a hearing was held to determine Kennedy's punishment. After hearing testimony from various witnesses, the district court sentenced Kennedy to a prison term of 75 years. *See* Tex. Penal Code Ann. § 12.32 (West 2003) (explaining that person found guilty of first-degree felony may be imprisoned for life or for any term between 5 and 99 years).

## DISCUSSION

Kennedy raises five issues on appeal. In his first three issues, Kennedy essentially asserts that the search warrant was not supported by probable cause and that the district court should therefore have granted his motion to suppress the evidence seized from his home. In his first issue, he generally asserts that information in the affidavit did not establish probable cause to search his home. In his second issue, Kennedy contends that the affidavit does not establish probable cause because it relies on material misstatements and omissions. In his third issue, Kennedy contends that the affidavit cannot establish probable cause because relevant portions of the affidavit were based on information that was stale at the time the warrant was issued. In his fourth issue, Kennedy argues that even if there was probable cause to issue the warrant, some of the evidence that was seized during the search was beyond the scope of the search warrant. Finally, he contends that the district court erred by improperly allowing the State to present, in rebuttal, argument concerning who fired the first shot during the shooting incident. As a corollary to these arguments, Kennedy asserts that if this Court rules in his favor on any of his five issues, we should reverse the district court's judgment and remand the case for a new trial rather than reverse for a new punishment

4

determination. Because the first four issues are related, we will address them together and address Kennedy's final issue separately.

**The First Four Issues are Waived**

At the outset of this case, we note the unusual nature of this appeal. As previously stated, Kennedy's first four issues are related to the evidence seized from his home after the commission of the offense. The State vigorously fought to preserve the right to introduce the evidence seized, and Kennedy pleaded guilty only after learning that the evidence would not be suppressed. When making his plea, Kennedy was under the assumption, which was shared by the State, that he would be allowed to contest that determination on appeal. Moreover, both Kennedy's and the State's arguments on appeal assume that Kennedy had the right to contest the district court's ruling, and neither party mentioned the concept of waiver. However, our review of relevant case law demonstrates that given the nature of the evidence Kennedy argues should have been suppressed, Kennedy waived his right to appeal the district court's ruling when he pleaded guilty to the crime of aggravated assault of a police officer, and we are, accordingly, prohibited from addressing the merits of these claims.

In 2000, the court of criminal appeals issued an opinion describing the circumstances in which a defendant may appeal a trial court's allegedly erroneous ruling after pleading guilty to the alleged offense. *Young v. State*, 8 S.W.3d 656 (Tex. Crim. App. 2000). Although that case involved a defendant who pleaded guilty to a crime but did not enter into a plea-bargain agreement, the court developed a single rule that applies in all situations in which a defendant pleads guilty regardless of

5

whether the plea was the result of a plea bargain. *Id.* at 666-67. In particular, the court held as follows:

> Whether entered with or without an agreed recommendation of punishment by the State, a valid plea of guilty or nolo contendere "waives" or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error.

*Id.* In that case, Young filed a motion to suppress evidence demonstrating that she was found to be in possession of cocaine, and the district court denied the motion. *Id.* at 657. The appellate court determined that Young had waived her right to appeal the ruling by pleading guilty to cocaine possession, *id.*, but the court of criminal appeals concluded that the ruling on the motion to suppress evidence was not independent of the offense of possession of a controlled substance and that the "judgment would not be supported without the evidence" *id.* at 667. Accordingly, the court concluded that the appellate court should have addressed the merits of the defendant's appeal. *Id.*

When interpreting the reasoning in *Young*, some appellate courts have determined that there must be a direct nexus between the error and the guilt or innocence of the appellant regarding the offense pleaded to. *See Guidry v. State*, 177 S.W.3d 90, 93 (Tex. App.—Houston [1st Dist.] 2005, no pet.). For example, more than one court has held that the judgment of guilt was not rendered independent of an alleged error by a trial court when the alleged error was the erroneous admission of evidence of the offense charged and when the judgment would not be supported without that evidence. *See, e.g.*, *Bradshaw v. State*, 40 S.W.3d 655, 660 (Tex. App.—San Antonio 2001, pet. ref'd.); *Hargrove v. State*, 40 S.W.3d 556, 558-59 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Often, this conclusion has been reached when the crime to which the defendant

6

pleaded guilty to is drug possession and when the allegedly improper ruling is the admission of evidence of the drugs seized. *See Bradshaw*, 40 S.W.3d at 660 (concluding that appellate court must hear merits of appeal because judgment of guilt of crime of possession of marijuana was not independent of trial court's ruling on motion to suppress evidence of marijuana found at Bradshaw's house); *Hargrove v. State*, 40 S.W.3d at 558-59 (concluding that plea was not independent of ruling on motion to suppress because there would have been no case had trial court agreed to suppress evidence of drug possession). In these cases, the allegedly erroneous rulings were not independent of the judgments because the admission of the evidence established at least one of the elements of the crimes alleged and because there would be no evidence of criminal activity if the evidence had been suppressed. Stated differently, the judgments would not have been supported without the evidence.

However, courts have held that when there is no direct nexus between the alleged error and the judgment, defendants waive their right to appeal the alleged error by entering a plea of guilty or nolo contendere. *See Ramirez v. State*, 89 S.W.3d 222, 232 (Tex. App.—Corpus Christi 2002, no pet.) (concluding that Ramirez waived right to complain about State's failure to produce evidence that investigators had found no medical proof that Ramirez had sexually penetrated victim because lack of evidence of penetration had no nexus to guilt or innocence of offense charged, which was aggravated sexual assault by contact); *Fountain v. State*, 79 S.W.3d 72, 74 (Tex. App.—Beaumont 2002, no pet.) (holding that appellant waived right to appeal ruling on motion to suppress evidence under *Young*; court noted that it was unclear from record what evidence Fountain wanted suppressed but ultimately concluded that judgment "was rendered on the

7

independent" "testimony of Deputy Paske," which was admissible); *see also Guidry*, 177 S.W.3d at 93-94 (holding that appellant waived right to appeal on ground that his counsel was ineffective during plea bargain process because there was no nexus between behavior complained of and Guidry's decision to plead guilty several weeks after allegedly ineffective assistance).

For the reasons that follow, we believe that Kennedy's adjudication of guilt was independent of and not supported by the district court's decision to deny his motion to suppress the evidence seized from his property and further conclude that the judgment would have been supported without the disputed evidence. *See Hargrove*, 40 S.W.3d at 558 (reasoning that when determining if plea is independent of error, court must consider "nature of the issue upon which the trial court ruled"). As a result of the issuance of the search warrant, the State recovered the following items from Kennedy's property[1]: ammunition, an "AK-47 semi-automatic assault rifle," another semi-automatic rifle, two semi-automatic handguns, a shotgun, a handgun, a flare gun, a safe containing ammunition, a box containing ammunition, a kevlar helmet, bullet-proof vests, and a metal plated wall.

Unlike other cases in which appellate courts have addressed the merits of an appeal by an individual who has pleaded guilty to a crime but asserted that the trial court erred by not suppressing certain evidence, none of the items recovered from Kennedy's home have any bearing

---

[1] The State also recovered a gun cleaning kit, two binders containing paperwork relating to various weapons and body armor, some of Kennedy's notes and paperwork, and Kennedy's passport; however prior to the suppression hearing, the State elected not to try to admit those items. Moreover, although the district court denied Kennedy's motion to suppress in most respects, it did suppress gas masks and filters recovered from Kennedy's property after concluding that those items were outside the scope of the search warrant.

on any of the elements of the offense Kennedy pleaded guilty to and do not on their own serve to establish his guilt for the crime alleged. As discussed previously, Kennedy was charged with the crime of aggravated assault of a police officer. To establish Kennedy's guilt, the State was required to prove that Kennedy "intentionally or knowingly" threatened Kunz "with imminent bodily injury," Tex. Penal Code Ann. § 22.01(a)(2), knowing that Kunz was "a public servant," *id.* § 22.02(b)(2)(B). Further, the State was required to prove that Kennedy committed the offense while using or exhibiting "a deadly weapon during the commission of the assault," *id.* § 22.02(a)(2), and while Kunz was "lawfully discharging" his official duty, *id.* § 22.02(b)(2)(B).

None of the seized items was used during the crime, nor were the items found at the crime scene. Further, none of the items helped establish any of the elements of the offense. They do not establish Kennedy's mental state on the night of the shooting or establish whether he intentionally or knowingly assaulted Kunz. The items also have no bearing on whether Kennedy knew that Kunz was a police officer or whether Kunz was lawfully performing one of his official duties when he was assaulted. Finally, the items do not help establish whether Kennedy was using a deadly weapon on the night of the shooting.

The elements of the offense in question were established by the evidence collected from the crime scene, by the testimony of Kunz, and by the admission of a video recording made by a camera mounted inside Kunz's patrol car. This evidence was all admissible. Kunz testified that in March 2005, he observed Kennedy speeding on IH-35. In response, Kunz activated his emergency lights and followed the vehicle. After Kunz activated the lights, Kennedy moved his car to the left side of the highway and stopped his car next to a concrete barrier separating the northbound and southbound lanes. The video confirmed that Kunz did activate his emergency lights and did pull

Kennedy over.

Kunz further testified that after both cars had stopped, he exited his patrol car and approached Kennedy's vehicle. Upon arrival, Kunz asked to see Kennedy's driver's license and proof of insurance. According to Kunz, rather than complying with this request, Kennedy reached down, pulled out a handgun, and pointed it at Kunz. After seeing the weapon, Kunz immediately took cover behind his patrol car. Although Kennedy disputes that he fired the first shot, what is not in dispute is that a shoot-out ensued and that Kennedy shot several rounds of bullets from his handgun at Kunz. Kunz testified that after Kenendy had fired several shots from his handgun, Kennedy switched weapons and continued shooting at Kunz and the patrol car with a rifle. In addition, Kunz testified that Kennedy shot approximately 30 rounds from the rifle.

The video confirmed that Kunz approached Kennedy's car and that Kunz informed Kennedy why he had been pulled over and asked Kennedy to produce his license and proof of insurance. The video also demonstrated that Kunz was wearing a police uniform during the stop. Further, the video confirmed that shortly after Kunz approached the car, both Kunz and Kennedy began shooting at one another. Additionally, the video revealed that Kennedy fired numerous shots at Kunz and then switched weapons and that after switching weapons, Kennedy stood in the doorway of his car and continued shooting.

In addition to the preceding evidence, other witnesses also testified and confirmed that the weapons described by Kunz were recovered from the scene of the shooting. Further, these witnesses testified regarding the numerous bullet fragments that were recovered from Kunz's patrol car, which Kunz took cover behind during the shooting, and from the area immediately surrounding where the shooting took place.

10

For the reasons stated, we conclude that Kennedy waived the first four issues of his appeal by pleading guilty because his conviction was rendered independent of and not supported by the error allegedly committed by the district court.

**Rebuttal Evidence**

In his final issue on appeal, Kennedy asserts that the district court erred by allowing the State to make arguments that exceeded the scope of permissible rebuttal argument during the punishment hearing by alluding to information that was not in the record and by making arguments that were not responsive to Kennedy's closing argument. In particular, Kennedy contends that after the State and the defense had rested their cases, the State impermissibly asserted during its closing argument its contention that Kennedy had fired the first shot. The allegedly improper argument occurred immediately after the State played a modified version of the videotape recording of the shooting. The modifications included magnification and other enhancements to highlight certain portions of the videotape. The relevant portions of the exchange are as follows:

[State]: And there's several showings of this. The first here is in real time.

(Portion of State's P-109 is played)

[State]: **Look, I want you to study who did shoot first**.

(Portion of State's P-109 is played)

[State]: Now we have got a shorter version, Judge, that is played at half speed.

(Portion of State's P-109 is played)

[State]: And there's some demarcations if you look inside the car just to the left of the driver's head. When the officer begins his retreat, you will see a bright flash

11

lasting for only a single video frame.

[Defense]: Your Honor, may we approach, briefly?

[The Court]: You may.

(Video stopped)

(At the bench, on the record)

[Defense]: Your Honor, we would object that counsel has the obligation of fully opening. This is not in response to anything that - - we certainly haven't suggested that Officer Kunz shot first or second or whatever. This is not - - this is not an issue that was litigated in this litigation.

We both - - we have got - - we have experts which we - - you know, by the kazoo about who fired the first shot. This is not fair rebuttal. Your Honor. It goes to a matter that's not an issue. It was never brought up in the case in chief and it was not brought up in the punishment proceedings by either side.

This is an attempt to use his advantage of being able to close on top to respond to something that is not responsive and that is not fair rebuttal, Your Honor.

[State]: Judge, I believe I am responding. He said that Officer Kunz could have been killed if [Kennedy] had really wanted to kill him.

[The Court]: Objection overruled.

(Emphasis added.)

Kennedy asserts that argument concerning who shot first was improper because he made no assertion that Kunz had fired first. Moreover, Kennedy asserts that arguing that he shot first was not an appropriate response to the evidence he presented, which indicated that he might have been attempting to induce the officer to shoot him. In other words, he argues that his evidence demonstrating that he was seeking to provoke a response from law enforcement does not bear on who shot first. Finally, Kennedy contends that because the issue of who initiated the shooting had not been argued during the State's case-in-chief, he did not introduce his expert report stating that

12

Kunz had actually fired first and further contends that he was then prohibited from introducing the report in response to the State's accusation.[2]

In making his assertion that the State's argument was improper, Kennedy relies on cases defining limitations on closing arguments during jury trials and does not refer to cases concerning the propriety of closing arguments made during bench trials. For the sake of argument, we will assume that the same limitations apply to bench trials. To be proper, closing argument must fall within one of the following permissible categories: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement." *Primes v. State*, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.). Any argument that exceeds the boundaries of the permissible categories is error, but it is only reversible error if, "in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial." *Felder v. State*, 848 S.W.2d 85, 91 (Tex. Crim. App. 1992).

For the reasons that follow, we believe that the State's argument appropriately falls into the first three categories. First, during the punishment hearing, Kennedy alluded to the idea that he had not fired the first shot, and the State's argument was, therefore, an answer to that theory. In particular, the following exchange occurred while Kennedy was cross-examining Kunz:

[Defense]: My understanding is that you actually saw the barrel of the weapon.

---

[2] Although Kennedy was not allowed to have an additional argument to respond to the State's allegedly improper closing argument, he was allowed to introduce his expert report into the record as a bill of exception.

[Kunz]: Yes.

[Defense]: That you actually described looking directly into the black hole of the weapon.

[Kunz]: Yes, Sir.

[Defense]: Had Mr. Kennedy squeezed off a round at that point, while you were looking directly into the black hole of the weapon you probably wouldn't be here today.

Kennedy further alluded to this possibility when questioning Kunz regarding a report that he filled out after the shooting. In particular, Kennedy insinuated that Kunz drew his weapon and fired his handgun before he heard any gun shots, implying that Kunz fired first. The relevant portion of the exchange provides as follows:

[Defense]: And that's on Defendant's Exhibit P-2. On Defendant's Exhibit P-1, which was the other statement you gave that same day, let me ask you if you would look at that first page of your narrative.

[Kunz]: Uh-huh.

[Defense]: You state, "I then ran" - - this is towards the bottom of the third paragraph. "I then ran for my life towards my vehicle on to the passenger's side and to the rear passenger's corner." Is that correct?

[Kunz]: I believe that is correct.

[Defense]: And then it follows and you make this statement . . . "As I was running between my patrol car and the suspect's vehicle I did not hear any gun shots coming from the suspect's vehicle."

[Kunz]: Yes.

. . .

[Defense]: And that was true, was it not? You didn't hear any gunshots coming from

14

the suspect's vehicle as you ran from his vehicle to your vehicle?

[Kunz]: As I recall I do not remember hearing the gunshots.

[Defense]: In both the report that you typed . . . and the statement of fact witnessed and typed and signed by you by the Texas Rangers . . . there is no mention - - when you say "I ran for my life towards my vehicle," there is no mention that you reached for your weapon almost immediately after leaving the side of Mr. Kennedy's vehicle, is there?

[Kunz]: As I recalled at the time, I didn't remember doing that.

[Defense]: In both [reports] . . . there is no mention that you drew your weapon as you ran between the two vehicles.

[Kunz]: Again, when I was making the statement I did not recall drawing my weapon at that time.

[Defense]: Officer, in both [reports] . . . you make no mention of the fact that shortly after you departed Mr. Kennedy's vehicle before you arrived at your vehicle you stopped, turned towards his vehicle, and discharged your weapon. There is no mention of that, is there?

[Kunz]: There is no mention because at that time I did not recall doing that.

. . .

[Defense]: But having reviewed the video even days after the events you do realize that with respect to those matters I have described, that is the fact that you actually fired as you departed his vehicle, those [statements] I guess would not be certainly inconsistent or inaccurate, would they not?

Second, the modified videotape and the State's argument concerning the videotape constituted a summation of evidence that had previously been admitted. On the day before the modified tape was played for the district court, the entire original and unaltered videotape was played for the court.

Finally, the State's argument would also qualify as a reasonable deduction from the

15

relevant evidence presented at trial. The State introduced undisputed evidence that Kennedy pointed a gun at Kunz shortly after Kunz pulled Kennedy over for a traffic violation, that Kennedy fired repeatedly at Kunz and his patrol car, and that Kennedy switched guns, got out of his car, and continued firing at Kunz. In light of the preceding, it was reasonable for the State to deduce and argue that Kennedy fired the first shot.

Because the State's argument falls within the permissible types of closing arguments, the district court did not err by allowing it. Accordingly, we overrule Kennedy's fifth issue on appeal.

## CONCLUSION

Having concluded that Kennedy waived his first four issues and having overruled Kennedy's fifth issue on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   August 13, 2008

Publish

16