# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-07-00134-CR

**Michael Patrick Kennedy, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2006-016, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

Michael Patrick Kennedy pleaded guilty to the crime of aggravated assault of a police officer. *See* Tex. Penal Code Ann. §§ 22.01(a) (defining assault), 22.01(b)(1) (providing that assault is third degree felony if it is committed against public servant engaged in his official duties), 22.02(a) (defining aggravated assault in relation to definition of assault found in section 22.01), 22.02(b)(2)(B) (West Supp. 2010) (specifying that aggravated assault is first-degree felony if committed against public servant performing his official duties). After Kennedy was arrested, the police obtained a warrant to search Kennedy's residence and seized various items from his property. Prior to trial, Kennedy filed a motion to suppress the evidence that was seized under the warrant. The district court denied the motion, and Kennedy pleaded guilty. In his first three issues on appeal,

Kennedy argued that the district court erred by denying his motion because there was no probable cause to issue the warrant. In his final issue, he alleged that the district court erred in admitting some of the evidence obtained from his home because the evidence was outside the scope of the warrant. When this case was initially presented for review before this Court, we determined that Kennedy waived the four issues discussed above. *Kennedy v. State*, 262 S.W.3d 454, 460 (Tex. App.—Austin 2008) ("*Kennedy I*"). Kennedy appealed the judgment of this Court. On appeal, the court of criminal appeals concluded that this Court erred by holding that Kennedy waived his appellate issues and remanded the case for consideration of those issues. *Kennedy v. State*, 297 S.W.3d 338, 342 (Tex. Crim. App. 2009) ("*Kennedy II*").[1] On remand, we will reverse the judgment of the district court.

## BACKGROUND

Late one night in March 2005, Officer Richard Kunz observed Kennedy speeding on I-35 and initiated a traffic stop. After Kennedy pulled his vehicle over to the side of the road and stopped his car, Kunz approached Kennedy's car. Although the identity of the person who initiated the shooting is disputed, it is undisputed that shortly after Kunz reached Kennedy's car, multiple

---

[1] When the case was initially before this Court, Kennedy also argued in a fifth issue that the district court erred by allowing the State to introduce impermissible evidence during its rebuttal regarding who fired the first shot. Ultimately, we concluded that the district court did not err, and we overruled Kennedy's fifth issue. *Kennedy v. State*, 262 S.W.3d 454, 460, 463 (Tex. App.—Austin 2008), *rev'd on other grounds*, 297 S.W.3d 338 (Tex. Crim. App. 2009). The court of criminal appeals made no determination regarding Kennedy's fifth issue. *See Kennedy v. State*, 297 S.W.3d 338 (Tex. Crim. App. 2009). Accordingly, our determination regarding Kennedy's fifth issue remains undisturbed, and we do not address that issue in this opinion.

shots were fired by both Kennedy and Kunz. During the exchange, Kennedy was shot three times, but Kunz was not injured.

In response to a call by Kunz, several police officers arrived on the scene, and Kennedy was arrested and taken into custody. After being arrested, Kennedy was charged with attempted capital murder and deadly conduct. *See* Tex. Penal Code Ann. §§ 15.01 (West 2003) (explaining criminal attempt), 19.02 (defining murder), 22.05 (West 2003) (defining crime of deadly conduct), § 19.03(a)(1) (West Supp. 2010) (providing that person commits capital murder if he "murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman").

Several days after Kennedy was arrested, the police prepared an affidavit for the purpose of obtaining a warrant to search Kennedy's home. *See* Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2010) (requiring that sworn affidavit be filed when search warrant is requested); *see also id.* art. 18.01(a) (West Supp. 2010) (defining search warrant as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate").

Shortly after the affidavit was filed, a search warrant was issued, and law-enforcement officers executed the warrant and seized various items from Kennedy's residence, including weapons and ammunition. Subsequent to the seizure, Kennedy filed a motion to suppress the seized items. In particular, Kennedy contended that the items should be suppressed because there was no probable cause to support the warrant, the information in the affidavit supporting the warrant was stale, the

3

police did not properly establish the reliability and credibility of one of the sources of information mentioned in the affidavit, and the police seized items that were outside the scope of the warrant.

In early January 2006, a suppression hearing was held. After hearing testimony, the district court concluded that two types of items seized were beyond the scope of the warrant but admitted the remaining items and denied the motion to suppress.[2] Further, the court found that the warrant was supported by probable cause, that "[t]here was reliability in the affidavit," and that the information in the affidavit was not stale.

Prior to the suppression hearing, Kennedy negotiated a plea agreement with the State in which he agreed to plead guilty to the crime of aggravated assault of a police officer in the event that the district court denied the motion to suppress. Under the agreement, Kennedy agreed to leave the terms of the punishment "open." In other words, the plea agreement did not recommend a specific punishment, and the court was free to impose any punishment allowable for the crime of aggravated assault of a police officer. As part of the agreement, the State agreed to dismiss the charges of attempted capital murder and deadly conduct. In addition, Kennedy retained the right to appeal the district court's ruling on his motion to suppress if it ruled against him.

Immediately after the court denied his motion to suppress, Kennedy pleaded guilty. Approximately two months later, in March 2006, a hearing was held to determine Kennedy's

---

[2] Although the district court denied Kennedy's motion to suppress in most respects, it did suppress gas masks and filters recovered from Kennedy's property after concluding that those items were outside the scope of the search warrant. The State also recovered a gun-cleaning kit, two binders containing paperwork relating to various weapons and body armor, some of Kennedy's notes and paperwork, and Kennedy's passport; however, prior to the suppression hearing, the State elected not to admit those items.

punishment.  After hearing testimony from various witnesses, the district court sentenced Kennedy to a prison term of 75 years.

Kennedy appealed the judgment against him.  In his first three issues, Kennedy alleged that the district court erred by denying his motion to suppress because the search warrant was not supported by probable cause.  In his fourth issue, he alleged that the district court erred in admitting some of the evidence obtained from his home because the evidence was outside the scope of the warrant.  On appeal, we initially determined that Kennedy waived these four issues.  In reaching that conclusion, we relied on the rule established in *Young v. State*, 8 S.W.3d 656 (Tex. Crim. App. 2000), which provides as follows:

> Whether entered with or without an agreed recommendation of punishment by the State, a valid plea of guilty or nolo contendere "waives" or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error.

*Kennedy I*, 262 S.W.3d at 458 (quoting *Young*, 8 S.W.3d at 666-67).  In light of that rule, we concluded that Kennedy waived those four issues because "Kennedy's adjudication of guilt was independent of and not supported by the district court's decision to deny his motion to suppress the evidence seized from his property" and because "the judgment would have been supported without the disputed evidence."  *Id.* at 459-60.

After our opinion issued, Kennedy appealed our determination that he waived his four appellate issues.  The State surprisingly agreed with Kennedy, and both parties asked the court of criminal appeals to remand the case so that this Court may address the issues originally raised by Kennedy.  *See Kennedy II*, 297 S.W.3d at 340.  When addressing the issue of waiver, the court of

5

criminal appeals noted that this case is "a charge-bargain case." *Id.* In other words, the State and Kennedy entered into an agreement in which Kennedy agreed to "plead guilty to aggravated assault on a peace officer with a deadly weapon in exchange for a dismissal of the attempted capital murder and deadly conduct charges." *Id.* at 342. The court also noted that although Kennedy agreed to allow the district court to determine the sentence regarding the offense pleaded to, the agreement "effectively capped" Kennedy's punishment range because he was now only subject to a "single punishment for a first degree felony offense." *Id.*; *see also Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003) (explaining that agreement to dismiss charge "effectively puts a cap on punishment at the maximum sentence for the charge that is not dismissed"). Because the agreement at issue reduced the potential punishment that may be imposed on Kennedy, the court concluded that the case was governed by rule of appellate procedure 25.2(a)(2), which allows a defendant in a plea-bargain case to appeal "those matters that were raised by written motion filed and ruled on before trial, or" matters that the defendant obtained permission to appeal. *Kennedy II*, 297 S.W.3d at 342; *see* Tex. R. App. P. 25.2(a)(2); *see also* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006) (providing same rights as under rule 25.2). In other words, even though the waiver rule identified in *Young* by its terms applies to open pleas as well as traditional plea-bargain cases in which the State and the defendant agree to a punishment that is less than the maximum allowed in exchange for the defendant pleading guilty to the crime alleged, the court of criminal appeals seemingly determined that the waiver rule has no applicability to charge-bargain cases that effectively cap potential punishments through the dismissal of one or more charges. Accordingly, the court of

criminal appeals remanded the case in order to allow this Court to address the issues that we previously determined that Kennedy had waived.

## DISCUSSION

As mentioned above, Kennedy raises four issues on appeal. In his first three issues, Kennedy essentially asserts that the search warrant was not supported by probable cause and that the district court should therefore have granted his motion to suppress the evidence seized from his home. In his first issue, he generally asserts that information in the affidavit did not establish probable cause to search his home. In his second issue, Kennedy contends that the affidavit does not establish probable cause because it relies on material misstatements and omissions. In his third issue, Kennedy contends that the affidavit cannot establish probable cause because relevant portions of the affidavit were based on information that was stale at the time the warrant was issued. In his fourth issue, Kennedy argues that even if there was probable cause to issue the warrant, the district court erroneously admitted evidence that was seized during the search but was beyond the scope of the search warrant. As a corollary to these arguments, Kennedy asserts that if this Court rules in his favor on any of his four issues, we should reverse the district court's judgment and remand the case for a new trial rather than reverse for a new punishment determination.

Because the first and third issues contend that the warrant was not supported by probable cause, we will consider them together. The resolution of these issues is dispositive of the outcome of this appeal, and accordingly, we will not address Kennedy's second or fourth issue. However, before addressing any of the issues, we provide a general overview of the requirements

7

for establishing probable cause and the manner in which courts review probable-cause determinations.

**Probable Cause**

Both the Federal and the Texas Constitutions dictate that no search warrants may be issued without probable cause. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9;[3] *see also* Tex. Code Crim. Proc. Ann. art. 18.01(b) (providing that "[n]o search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance"). When determining whether probable cause exists to issue a search warrant, courts should be mindful of the proposition that there is a "strong preference for searches conducted pursuant to a warrant" over searches conducted without a warrant. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see United States v. Ventresca*, 380 U.S. 102, 106-07

---

[3] In particular, the Fourth Amendment of the Federal Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> Similarly, the Texas Constitution provides as follows:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Tex. Const. art. I, § 9.

8

(1965) (noting that fact that there are so few exceptions to warrant requirement "underscores the preference accorded police action taken under a warrant as against searches and seizures without one"). Because of the preference to be given search warrants, a search incident to a warrant may be upheld in doubtful or marginal cases in which a search without a warrant would be unsustainable. *Ventresca*, 380 U.S. at 106; *see Massachusetts v. Upton*, 466 U.S. 727, 734 (1984) (recognizing that it may not be easy to determine if probable cause is present in particular case but emphasizing that resolution of inquiry should be made in light of preference given to warrants). The preference for warrants is based on the idea that it is more desirable to have a neutral magistrate review the evidence rather than to allow officers "'engaged in the often competitive enterprise of ferreting out crime'" to make the determination. *Gates*, 462 U.S. at 240 (quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)); *see Aguilar v. Texas*, 378 U.S. 108, 110-11 (1964) (providing that informed and deliberate determinations by magistrates are preferred over hurried actions of police officers).

When determining whether probable cause exists, courts should consider the totality of the circumstances. *Gates*, 462 U.S. at 238; *see Upton*, 466 U.S. at 728 (explaining that magistrates should not employ fixed and rigid formulas when determining if probable cause is present). In making this determination, magistrates should only rely on the facts "found within the four corners of the affidavit" accompanying the request for a warrant, *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 18.01(b) (requiring applicants for search warrant to file "sworn affidavit setting forth substantial facts establishing probable cause"), and should review the affidavit in a common sense, rather than a

9

hypertechnical, manner, *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007); *see Ventresca*, 380 U.S. at 108-09. *But see Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (explaining that reviewing courts are not limited to examination of four corners of affidavit if there are allegations that affidavit contains "known falsehoods"). As part of their probable-cause assessment, magistrates are permitted to make reasonable inferences from the information in the affidavit. *Rodriguez*, 232 S.W.3d at 61. Ultimately, the magistrate must determine whether "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see United States v. Grubbs*, 547 U.S. 90, 95 (2006); *Rodriguez*, 232 S.W.3d at 60; *see also Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006) (explaining that probable cause exists when facts justify conclusion that object of search is probably on property to be searched "*at the time the warrant is issued*") (emphasis added).

To be proper, the accompanying affidavit must provide enough information to allow a magistrate to determine if probable cause exists and to ensure that the magistrate's determination is not "a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239; *see Franks v. Delaware*, 438 U.S. 154, 165 (1978) (explaining that affidavit "must set forth particular facts and circumstances underlying the existence of probable cause" that allow "magistrate to make an independent evaluation of the matter"); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. Crim. App. 1990) (explaining that affidavit must contain "sufficient information" to support probable-cause finding). Stated differently, an affidavit will not justify the issuance of a search

warrant if it simply contains conclusory statements that provide no basis for determining if probable cause actually exists, *see Rodriguez*, 232 S.W.3d at 61; *Ashcraft v. State*, 934 S.W.2d 727, 733 (Tex. App.—Corpus Christi 1996, pet. ref'd), and an affidavit will only be effective if it contains allegations that amount to something greater than the affiant's suspicion or the "repetition of another person's mere suspicion," *Adair v. State*, 482 S.W.2d 247, 249 (Tex. Crim. App. 1972). Importantly, there must be a nexus between the items sought to be seized and the alleged criminal behavior. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). That nexus is automatically established when the items sought are contraband or the fruits obtained from or the instruments used in the criminal activity at issue, but the nexus is not automatic when the items sought are "mere evidence." *Id.*; *see also Joseph v. State*, 807 S.W.2d 303, 307 (Tex. Crim. App. 1991) (describing "mere evidence" as evidence that is "connected with a crime" but is not "fruits, instrumentalities, or contraband"). For mere evidence, "probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Hayden*, 387 U.S. at 307.

In addition to the above requirements, to establish probable cause, the information contained in a warrant's accompanying affidavit must not be stale. *McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In other words, the facts contained in the affidavit must have occurred recently enough to allow the magistrate to conclude that probable cause exists at the time that the warrant is requested and ultimately issued. *Guerra v. State*, 860 S.W.2d 609, 611-12 (Tex. App.—Corpus Christi 1993, pet. ref'd); *see also McKissick*, 209 S.W.3d at 214 (explaining that when determining whether information in affidavit is stale, courts should

11

examine "the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued"). If so much time has passed that it is unreasonable to presume that the sought items are still located at the suspected place, the information in an affidavit is stale. *See McKissick*, 209 S.W.3d at 214; *Guerra*, 860 S.W.2d at 611. Although the passage of time should be considered when determining if the information in an affidavit is stale, the amount of time passed is less significant if the affidavit contains facts showing "activity of a protracted and continuous nature, i.e., a course of conduct." *McKissick*, 209 S.W.3d at 214. In addition, a determination regarding whether the information in an affidavit is stale should also involve consideration of the type of property to be seized and the probability that the property may have been relocated. *See Bradley*, 966 S.W.2d at 875.

When reviewing a magistrate's probable-cause determination, the reviewing court employs a "highly deferential standard," *Rodriguez*, 232 S.W.3d at 61, and should uphold a determination of probable cause provided that the magistrate had a "substantial basis" from which he could conclude that a "search would uncover evidence of wrongdoing," *Gates*, 462 U.S. at 236; *see Upton*, 466 U.S. at 728. However, the deference afforded a magistrate's determination "is not boundless," and a reviewing court "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 914 (1984) (stating that courts must insist that magistrates perform job in neutral and detached manner and not be rubber stamp for police) (quoting *Gates*, 462 U.S. at 239); *Davis*, 202 S.W.3d at 157 (explaining that affidavit does not provide substantial basis when "too many inferences must be drawn"). Reviewing courts do not consider whether there

12

are "other facts that could have, or even should have, been included in the affidavit"; instead, "we focus on the combined logical force of facts that are in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 S.W.3d at 62. We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under that standard, we "give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.*

**The Affidavit Does Not Provide a Substantial Basis for a Probable-Cause Determination**

As described previously, in his first and third issues, Kennedy contends that the affidavit did not establish probable cause to search his home. The affidavit was prepared by Dewayne Goll, a Texas Ranger. It recounted the events surrounding the shooting incident and the items found after searching Kennedy and his vehicle. In particular, the affidavit specified that the police recovered the following from the scene of the shooting:

> A Smith and Wesson 9mm caliber, semi automatic handgun, with one spent magazine and three additional full magazines, a Colt "ponylite" 380 caliber semi automatic pistol with four additional magazines, an AK-47 Assault with one 30 round spent magazine with one 30 round magazine "taped opposite" the inserted magazine and an additional four magazines.

The affidavit alleged that Kennedy had committed attempted capital murder on the night of the shooting. *See* Tex. Penal Code Ann. §§ 15.01, 19.03. Furthermore, the affidavit also alleged that Kennedy was in possession of prohibited weapons and that he was keeping them at his house. *See id.* § 46.05(a) (West Supp. 2010) (providing list of statutorily prohibited weapons).

13

Accordingly, the affidavit sought permission to search for evidence of these two crimes at Kennedy's home and surrounding property, including an in-ground structure in the back of Kennedy's property, which the affidavit referred to as a "bunker."[4] In particular, the affidavit sought permission to search for the following property:

> Ammunition and reloader equipment of the same type and lot number utilized by KENNEDY in the Criminal Attempt to Commit Capital Murder on 03-03-2005 of Officer Richard Kunz, assault type weapons (AK-47), and semi automatic firearms, explosive devices and improvised explosive devices (IED's).

In addition, the affidavit contained several paragraphs detailing the basis for Goll's assertion that probable cause existed to search Kennedy's home. First, the affidavit recounted information that was given to the police by an acquaintance of Kennedy, Mike Hernandez, and by Kennedy's neighbor, Andy Poznecki. The affidavit stated that Hernandez informed the police that Kennedy had previously asked him to perform some construction work on the in-ground structure.[5] Further, the affidavit related that when Hernandez went to Kennedy's property, approximately four months before the shooting incident, Hernandez personally observed weapons and ammunition inside the structure and that Kennedy told Hernandez that there were AK-47 rifles inside the structure. In particular, the affidavit provided, in relevant part, as follows:

> The San Antonio Bureau of Alcohol, Tobacco, and Firearms advised that they were aware from a confidential informant identified as Mike Hernandez (d.o.b. 11-20-

---

[4] Copies of photographs that were taken of the structure were attached to the affidavit.

[5] Hernandez contacted the police and gave a written statement after learning about the shooting.

14

1974) which provided that KENNEDY has a "bunker" on his property used to store additional weapons, ammunition, an ammunition reloader, generator, lights and "army style wooden lockers". Detective Michael "Mike" Weddel obtained a written statement from Hernandez and received the following information. Mike Hernandez is in a position to have knowledge of the property described above because he built a door on the bunker depicted . . . . Hernandez also personally observed in the "bunker" located on KENNEDY'S property "army style" boxes that KENNEDY advised Hernandez contained AK-47 rifles (your Affiant is aware that an AK-47 rifle was used by KENNEDY in the Criminal Attempt to Committ Capital Murder of Officer Kunz). Hernandez personally observed several "assault rifles", a generator, lights, and an ammunition loader also inside the "bunker."

Regarding Poznecki, the affidavit specified that he spoke with police officers a few days after the shooting and informed them that he saw a "booby trap" on a gun safe on Kennedy's property two years before the incident. In particular, the affidavit stated that "On 03-07-2005, a neighbor of KENNEDY identified as Andy [Poznecki] spoke with BATF Agent Alan Darilek and learned that [Poznecki] personally observed a 'shotgun shell booby trap' on a gun safe within the described residence approximately two (2) years ago." Further, the affidavit quoted Poznecki as warning the officers he spoke with to "be careful if they enter the KENNEDY property as he probably has more sophisticated explosives devices at this time."

Second, the affidavit described an interaction that Kennedy had with a police officer earlier on the day of the shooting in which he asked the officer to return a handgun that the police had previously taken from Kennedy. Specifically, the affidavit provided as follows:

On 03-04-2005, your affiant spoke with New Braunfels Police Department Lieutenant Mike Rust and learned that one of his subordinates Detective Scott Rankin spoke with KENNEDY on 03-03-2005 in reference to "getting his gun back". On 03-07-2005, your affiant spoke with Detective Rankin and learned that KENNEDY spoke with Rankin on the morning of 03-03-2005 (the morning that KENNEDY attempted to kill Officer Krunz) and KENNEDY advised Rankin that

15

he wanted to pick up his handgun previously seized by the New Braunfels Police
Department.

The affidavit does not state why the gun had been seized and does not specify whether the police officer agreed to return the gun.

Third, the affidavit detailed inferences drawn by Goll and other law-enforcement personnel explaining why, in light of their training and experience and in light of the facts recounted above, they believed that there was sufficient cause to issue a warrant.

Finally, based on all the information provided, the affidavit specified that executing the search warrant would further the investigation of the shooting incident and would allow the police to search for evidence that Kennedy was in possession of illegal weapons at his home.

With the preceding in mind, we must now determine whether the affidavit provided an adequate basis to find probable cause to believe that there were statutorily prohibited weapons on Kennedy's property or to believe that the items sought were relevant to the charged offense of attempted capital murder.

*Prohibited Weapons*

For the reasons that follow, we believe that the affidavit did not provide a substantial basis for determining whether there was probable cause to believe that there were illegal weapons on Kennedy's property. *See* Tex. Code Crim. Proc. Ann. art. 18.02(4) (West 2005) (listing "weapons prohibited by the Penal Code" as one type of property that search warrant may be issued for). First, although the affidavit described the weapons and ammunition that were recovered from Kennedy's car on the night of the shooting, nothing in the affidavit indicated that any of the weapons were

16

legally prohibited. In other words, nothing in the affidavit suggested that Kennedy's possession of the recovered items was, on its own, illegal.[6] Similarly, although the affidavit mentioned that Kennedy had asked the New Braunfels police department to return a handgun that had been taken from him, the affidavit did not explain why the handgun was taken or allege that it was seized because it was a legally prohibited weapon. Consequently, these portions of the affidavit provided no basis to conclude that there was a fair probability that prohibited weapons would be found on Kennedy's property.

Second, although the affidavit specified that Hernandez observed weapons, ammunition, and other related items within the in-ground structure located on Kennedy's property and that Kennedy told Hernandez that there were additional weapons inside storage containers in the structure, nothing in the affidavit indicated that any of the items that Hernandez observed or that were described to him by Kennedy were illegal to own, nor did the affidavit demonstrate that Hernandez believed that any of the various items were illegal. In fact, the terms used to refer to the weapons observed and described—assault rifle and AK-47[7]—can be used to refer to weapons that are completely legal to own.[8]

---

[6] Although our review is necessarily limited to the contents of the affidavit, we note that during oral argument, the State conceded that none of the items recovered from Kennedy's car or his home were illegal to possess.

[7] Although we do not reach the issue, we note that Kennedy objects to the inclusion of the term "AK-47" in the affidavit because Hernandez's written statement, which served as the basis for much of the information credited to Hernandez in the affidavit, did not mention AK-47s. Rather, in the statement, Hernandez only mentioned that there were "assault rifles" inside the in-ground structure.

[8] Even though we need not decide the issue, it is worth noting that Kennedy also claims that the portion of the affidavit summarizing Hernandez's observations was stale because the

17

Third, the only information in the affidavit that might have led to an inference that there were illegal weapons at Kennedy's residence came from Poznecki, who stated that he had seen a "shotgun shell booby trap" on a gun safe somewhere on Kennedy's property and who warned the police to be careful when entering Kennedy's property because "he probably has more sophisticated

observations were made several months prior to the issuance of the warrant. At least one Texas case has held that information in an affidavit indicating that an individual was in possession of prohibited weapons was not stale despite being based on observations made several months before the warrant was issued. *See Lockett v. State*, 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (concluding that affidavit, which stated that two informants saw weapons on Lockett's property months before issuance of warrant, was not stale).

At first glance, this holding would seem to support a conclusion that Hernandez's observations were not stale, but the affidavit in *Lockett* contained crucial additional information that is not present in this case. In particular, the affidavit specified that the first informant had known Lockett for five years, had known him to be in continuous possession of firearms for those five years, and had seen a prohibited weapon on Lockett's property within the past four months. *Id.* Although the affidavit did not state that the second informant had known Lockett to be in continuous possession of weapons for as long as the first informant had, it did state that the second informant saw a prohibited weapon on Lockett's property three months before the warrant issued and that the informant had made several visits to Lockett's property since first observing the weapon and had confirmed the weapon's presence on each subsequent visit. *Id.*

None of this additional information is present in the affidavit at issue in this case. In fact, the affidavit only recounted that Hernandez had seen weapons on the property on one occasion and did not state that he had known Kennedy to be in possession of weapons for a continuous period of time or provide any basis for inferring that Hernandez had confirmed the presence of guns on the property during the months after his initial observation. The absence of this type of additional information cuts against a conclusion that Hernandez's observations were not stale.

Moreover, unlike in the present case, Lockett had a felony record prior to the search and was, therefore, prohibited from possessing any type of firearm. *Id.* at 186; *see* Tex. Penal Code Ann. § 46.04(a) (West Supp. 2010) (describing circumstances under which it is illegal for person convicted of felony to own weapons). For this reason, the repeated observations of Lockett with otherwise legal firearms established a continuous course of illegal conduct. This is not the case here. Although the affidavit in this case established that Kennedy possessed weapons several months before the shooting and on the day of the shooting, Hernandez's observations and the recovery of weapons from the scene did not establish a course of conduct of possessing *illegal* weapons.

18

explosives devices *at this time*." (Emphasis added.) The affidavit did not provide any basis from which it could be inferred that Poznecki had knowledge of or would be able to identify potentially explosive devices, nor did the affidavit contain any information indicating that Poznecki would have any reason to believe that explosive devices had been added to the property in the two years since his observation of the "booby trap." For these reasons, Poznecki's warning that the police should be careful when entering the property was simply that and was therefore, at most, a mere suspicion, which, without more, cannot help establish probable cause. Moreover, the affidavit did not provide any explanation of what the shotgun shell booby trap was, nor did it describe whether the booby trap was composed of items that were illegal to possess, of legal items that had been arranged in a manner that made the possession of the items illegal, or of legal items that were utilized in a legal manner. Consequently, the affidavit did not provide an adequate basis for inferring that the booby trap was, in fact, an illegal weapon.

Even if it were possible to glean that the "shotgun shell booby trap" was somehow illegal, the information provided by Poznecki still could not have served as a basis for concluding that probable cause existed to search Kennedy's property for illegal weapons because the information was stale. *See United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (noting that when affidavit merely recites single violation, it is reasonable to surmise that probable cause vanishes "rather quickly with the passage of time"). The information obtained from Poznecki related to observations that he had made two years before the search warrant was issued. This is a significant span of time, and courts have generally overruled staleness challenges only when the amount of time passed was significantly less than two years. *Compare Uresti v. State*, 98 S.W.3d 321, 336

19

(Tex. App.—Houston [1st Dist.] 2003, no pet.) (concluding that information in affidavit relating to telephone calls received and made during time interval beginning two months before warrant issued and ending day before warrant issued was not stale), *and Hafford v. State*, 989 S.W.2d 439, 440-41 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that information regarding drug transactions obtained six days before warrant issued was not stale), *with Rowell v. State*, 14 S.W.3d 806, 809-10 (Tex. App.—Houston [1st Dist.] 2000) (concluding that information that Rowell had sold firearms to pawn shop and then reclaimed them on two occasions, most recently six months before issuance of search warrant, was stale and insufficient to support probable cause to search Rowell's house for firearms), *aff'd*, 66 S.W.3d 279 (Tex. Crim. App. 2001).

Moreover, although courts have upheld search warrants based on observations that were made several months before the warrants issued, those cases tend to involve situations in which the affidavit alleged criminal behavior that was continuous in nature, rendering the passage of time less important. *See, e.g.*, *United States v. Hershenow*, 680 F.2d 847, 854 (1st Cir. 1982) (holding that former employees' observations from several months earlier were not stale because affidavit alleged fraud scheme that was continuous in nature); *Morris v. State*, 62 S.W.3d 817, 823-24 (Tex. App.—Waco 2001, no pet.) (concluding that although it had been over one month since someone had seen Morris in possession of child pornography, information was not stale because affidavit also included facts showing that Morris had been in possession of child pornography over extended period of time). Nothing in the affidavit indicated that Kennedy was involved in a continuous activity of possessing illegal weapons. Although the affidavit listed several sources from which one could conclude that Kennedy had continually possessed weapons in recent history, the

20

only source from which one might conclude that Kennedy ever possessed an *illegal* weapon was Poznecki's vague description of something that might not have even been illegal to own. For this reason, the significant passage of time from Poznecki's observations to the date of the warrant was not obviated by facts demonstrating a protracted and continuous behavior.[9]

Furthermore, as described previously, staleness determinations also involve consideration of the type of property to be seized and of the probability that the property may have been relocated. *Bradley*, 966 S.W.2d at 875. Consideration of these additional factors does not

---

[9] Although the affidavit acknowledged that considerable time had passed since anyone observed weapons on Kennedy's property, the affidavit also contained a statement indicating that Goll and other law-enforcement personnel believed that the passage of time was not significant here. In particular, the affidavit specified, in relevant part, as follows:

> [I]t is your Affiant's experience and the experience of Agents of the Bureau of Alcohol Tobacco and Firearms (BATF), Comal County Sheriff's Office Detectives, and other Texas Rangers conferred with by your affiant that persons that maintain "caches of weapons" . . . do so for long periods of time and do not readily dispose of them.

Even assuming that the above statement amounted to more than a mere suspicion or belief, the statement cannot counteract the failings present in the affidavit. Given the items that were recovered from Kennedy's car on the night of the shooting and the fact that Hernandez had seen multiple weapons on Kennedy's property several months before the shooting, a reasonable inference could be made that there were weapons located on the property at the time the warrant was issued. However, the relevant inquiry was not whether there was probable cause to believe there were weapons on the property but whether there was probable cause to believe that there were *illegal* weapons on the premises. For the reasons already discussed, we believe that the information contained in the affidavit does not constitute a "substantial basis" from which a magistrate could properly conclude that a search would uncover evidence that Kennedy was in possession of illegal firearms. The fact that Goll and other officers believed that Kennedy was the type of person who would likely amass and keep weapons was not sufficient to overcome the general absence of evidence indicating Kennedy was in possession of illegal weapons or the fact that the only information upon which one might surmise that Kennedy was once in possession of illegal firearms was stale.

21

overcome the previously described deficiencies regarding the information in the affidavit. Although illegal weapons are not fungible in the same way that drugs are and may be retained for long periods of time, a single observation of a possibly illegal firearm two years prior to the warrant being issued would not establish a high probability that illegal firearms were on the property at the time of the warrant's issuance. Moreover, the description of the possibly illegal firearm did not provide any manner for ascertaining whether that object was likely to still be on the property. Specifically, the description of the object as simply a "shotgun shell booby trap" did not provide a basis to infer whether the booby trap was easily moveable or more permanently affixed to Kennedy's property.

Finally, the statements credited to Goll and other law-enforcement officials that were included in the affidavit to bolster the assertion that probable cause existed to search Kennedy's property were too conclusory to establish a basis for finding probable cause. As discussed previously, the affidavit included statements claiming that Goll and other law-enforcement personnel believed that Kennedy was "likely" in possession of statutorily prohibited weapons. In particular, the affidavit provided, in relevant part, as follows:

> Your affiant from his training and experience and conferring with ATF Agent Alan Darilek is aware that persons that carry and utilize numerous weapons as well as extra ammunition magazines are likely to collect and store numerous other weapons, ammunition and magazines both legal and illegal.
>
> . . . .
>
> It is your affiant's belief that persons that utilize weapons and ammunition that Michael KENNEDY possessed and utilized in the [shooting], are likely to utilize improvised explosive devices (IED's), "booby traps" and similar tactics.

22

These statements were too conclusory to properly serve as support for a probable cause-determination. *See State v. Davila*, 169 S.W.3d 735, 739-40 (Tex. App.—Austin 2005, no pet.) (concluding that statement that officer had "knowledge that narcotic transactions occur frequently" at particular residence was conclusory and vague and could not provide magistrate with basis for making determination regarding probable cause). They did not provide enough information to allow the reviewing magistrate to make an independent evaluation and provided no basis for the officers' beliefs. On the contrary, the statements provided nothing more than a summary of Goll's and others' bare and unsubstantiated beliefs and suspicions that people who "possess and utilize" some legal weapons were more likely to possess and use illegal weapons. *See Rodriguez*, 232 S.W.3d at 61; *see also Trimmer v. State*, 120 S.W.2d 265, 266 (Tex. Crim. App. 1938) (concluding that affidavit was insufficient because it was based on information and belief and contained no facts constituting probable cause); *Ashcraft*, 934 S.W.2d at 733 (explaining that statements in affidavit that "the three appeared to be in the process of making a drug deal as is common practice with drug dealers and users" and that "the couple left after an apparent exchange" were too conclusory by themselves to establish probable cause).

In addition, we note our strong concern regarding the use of these types of statements as support in a search-warrant affidavit. The statements postulated that individuals who possess and utilize legal weapons were likely to possess and utilize illegal weapons, and this type of rationalization is akin to the idea that individuals who legally use and possess over-the-counter or legally prescribed medications are more likely to use and possess illegal controlled substances. Regardless of whatever statistical significance statements of this sort might in fact possess, these

23

types of overly generalized and unsubstantiated statements that seek to imply illegal conduct based on legal conduct cannot serve as a legitimate basis for a probable-cause determination.

We recognize that when the police pursue legitimate law-enforcement goals, innocent individuals must sometimes bear the cost of a mistake, and this unfortunate and perhaps unavoidable consequence does not, on its own, violate the sacrosanct constitutional prohibitions against unreasonable searches. *See L.A. County v. Rettele*, 550 U.S. 609, 615-16 (2007) (explaining that standard employed in probable-cause determinations is one that is "short of absolute certainty" and, accordingly, will sometimes result in issuance of warrants to search innocent citizens). However, were we to conclude that the types of statements quoted above could legitimately serve as a basis for a probable-cause determination, then the law-enforcement net would become so wide that it would be able to ensnare virtually any citizen at any time for any reason, and the constitutional protections prohibiting unreasonable searches would effectively be rendered meaningless. Whatever powers may be imbued within the judicial pen, it cannot blot out one of the foundational rights of this country and of this State.

For the reasons previously stated, we believe that the affidavit did not provide a substantial basis for determining that there was probable cause to search Kennedy's property for prohibited weapons.

*Attempted Capital Murder*

In light of our previous conclusion, we must now consider whether the affidavit provided a substantial basis from which it could be inferred that there was probable cause to believe

that there were items on Kennedy's property that were relevant to the shooting with which he was charged.

For the reasons that follow, we believe that it did not. First, as a preliminary matter, we note that a portion of the affidavit attempting to explain the necessity of searching Kennedy's property for evidence of the shooting was unclear. After the affidavit listed items to be searched for, it continued as follows:

> Said property constitutes evidence that [sic] the offense described, (Criminal Attempt to Commit Capital Murder) in Paragraph 4, below, furthering the investigation of the Criminal Attempt to Commit Capital Murder . . . and Possession of Prohibited Weapons.

Although we recognize that reviewing courts should not invalidate a search warrant by reviewing its accompanying affidavit "in a hypertechnical, rather than a common sense, manner," *Ventresca*, 380 U.S. at 108-09, the relevance of the items sought was not readily ascertainable from the affidavit. However, even though the meaning was unclear, we will construe the sentence, in light of the remainder of the affidavit, as conveying the idea that the sought evidence would be helpful to the investigation of the shooting.

Second, even under the above construction, the affidavit still failed to provide a substantial basis for concluding that probable cause existed to search for proof of the shooting. As described earlier, cases concerning search warrants have explained that the Constitution requires a link between the crime specified (attempted capital murder) and the place to be searched or the items to be searched for. *See Hayden*, 387 U.S. at 307; *see also id.* (noting that for "mere evidence,"

25

probable cause needs to be examined in "terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction").

The code of criminal procedure also requires this type of link and sets out the types of items that may be sought through a search warrant and specifies the kind of information that must be contained within a search-warrant affidavit. In particular, the relevant portion of article 18.02 provides as follows:

A search warrant may be issued to search for and seize:

. . . .

(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense.[10]

---

[10] In its brief, the State asserts that "in these post-'9-11' days," "it would have been reasonable to infer . . . that [Kennedy] may have belonged to some sort of illegal paramilitary group" because of the shooting incident, the items recovered from Kennedy's car, and the fact that Kennedy might have been involved in another shooting incident in the past. Those arguments would seem to fall under subarticle 18.02(3) of the code of criminal procedure, which provides that "[a] search warrant may be issued to search for and seize: . . . (3) arms and munitions kept or prepared for the purposes of insurrection or riot." Tex. Code Crim. Proc. Ann. art. 18.02(3) (West 2005).

However, the affidavit made no mention of paramilitary groups and provided no basis for an inference that Kennedy belonged to a group that intended to engage in an insurrection or riot. Similarly, the affidavit did not mention a prior shooting incident. Instead, the affidavit simply stated that Kennedy had asked a member of the New Braunfels police department to return a gun that had previously been seized. Accordingly, we do not address whether this affidavit provided probable cause to support an inference that Kennedy was part of an illegal paramilitary group or that he was in possession of weapons for the purpose of insurrection. *See State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.) (stating that reviewing courts may only consider facts contained within four corners of affidavit and that although reasonable inferences may be made, they must be drawn from information contained in affidavit). Rather, we are limited to a determination of whether the affidavit provides probable cause to believe that evidence related to the shooting would be found at Kennedy's house and evidence that Kennedy was in possession of illegal weapons.

26

Tex. Code Crim. Proc. Ann. art. 18.02 (West 2005). Furthermore, for items searched pursuant to subarticle 10 (evidence of an offense), the code imposes additional requirements before a warrant may be issued, including the requirement that the affidavit contain information demonstrating that the items sought will constitute evidence of the offense or offenses described in the affidavit. *Id.* art. 18.01(c) (West Supp. 2010). In particular, the code provides as follows:

> A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) *that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense*, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

*Id.* (emphasis added).

The affidavit was not filed as support for the issuance of a warrant to search for evidence concerning the identity of the shooter or to confiscate the weapons used in the crime. In fact, the identity of the shooter and the weapons utilized were not in dispute, and Kennedy and the weapons that he used were taken into custody shortly after the shooting. Instead, the affidavit was filed as part of a request to search Kennedy's property in order to look for items that might have some relevance to the crime alleged. Although the affidavit partially complied with the requirements of article 18.01(c) by describing the offense in question and specifying that the property sought to be seized was believed to be on Kennedy's property, it failed to establish how the sought items constituted proof that Kennedy had attempted to commit capital murder on the night of the shooting.

27

*See Mulder v. State*, 707 S.W.2d 908, 916 (Tex. Crim. App. 1986) (concluding that affidavit for search warrant to obtain blood sample did not meet second requirement of subarticle 18.01(c) because it failed to show why blood was evidence of crime charged and noting that affidavit did not allege that defendant was injured or describe how his blood "might have been deposited at the scene"). The shooting was a self-contained event that occurred in response to a police officer pulling Kennedy over, and the affidavit failed to articulate how the potential recovery of the items listed in the affidavit would help to establish that the offense occurred. Because the affidavit failed to specify how the evidence to be seized constituted proof that the offense occurred, it did not establish the crucial nexus between the property to be seized and the crime alleged.

In light of the preceding, we conclude that the affidavit failed to provide a substantial basis from which it could be determined that there was probable cause to search Kennedy's property for proof of the shooting.

Because we have concluded that the affidavit did not provide a substantial basis for either crime alleged in the affidavit, we hold that the district court abused its discretion by failing to suppress the evidence obtained from Kennedy's residence.

**The Error Is Reversible Error**

Having determined that the district court erred by failing to grant Kennedy's motion to suppress, we must now consider whether that error is reversible error. *See* Tex. R. App. P. 44.2 (listing types of reversible errors in criminal cases).

The court of criminal appeals has instructed appellate courts not to speculate regarding the reasons why a defendant enters a guilty plea and regarding what effect the denial of

a motion to suppress may have had on the defendant's decision. *McKenna v. State*, 780 S.W.2d 797, 799-800 (Tex. Crim. App. 1989); *see Kraft v. State*, 762 S.W.2d 612, 614-15 (Tex. Crim. App. 1988) (stating that it is for defendant to decide "on what quantum of evidence to relinquish his rights and plead" and warning that courts should not speculate as to effect that ruling on motion to suppress had on defendant's ultimate decision to plead guilty). Moreover, the court has directed that if the evidence that should have been suppressed "would in *any* measure inculpate the accused," a reviewing court may presume that the denial of the motion to suppress influenced the defendant's decision to plead guilty. *See McKenna*, 780 S.W.2d at 799-800; *Kraft*, 762 S.W.2d at 615.

By obtaining a ruling in its favor, the State retained the option to use the unsuppressed evidence against Kennedy during a trial if Kennedy did not plead guilty, and in fact, the State did use the evidence during the punishment hearing. *See Kraft*, 762 S.W.2d at 614. But, as we noted in *Kennedy I*, "none of the items recovered from Kennedy's home has any bearing on any of the elements of the offense Kennedy pleaded guilty to" or "was used during the crime." 262 S.W.3d at 459. Moreover, unlike cases in which a defendant is attempting to suppress the admission of contraband, all of the items recovered in this case are perfectly legal to own. For that reason, an argument could be made that the admission of the items recovered through the search did not "inculpate" Kennedy. *See Black's Law Dictionary* 528 (6th ed. abridged 1991) (defining "inculpate" as meaning "[t]o impute blame or guilt; to accuse; to involve in guilt or crime"). However, whatever else the unsuppressed evidence may have been used for, the evidence was used to paint Kennedy in an unfavorable light, and the district court's denial of Kennedy's motion to suppress the evidence could have been "the straw that broke the proverbial camel's back" regarding Kennedy's decision

29

to agree to plead guilty. *See Kraft*, 762 S.W.2d at 614. In light of that consideration, the court of criminal appeals' instruction to consider the merits of Kennedy's appellate issues, *Kennedy II*, 297 S.W.3d at 342, and the public-policy interest of allowing plea-bargaining defendants to appeal rulings on pre-trial motions in order to avoid the need for conducting full trials solely for the purpose of preserving an issue for appellate review, *see Young*, 8 S.W.3d at 666; *McKenna*, 780 S.W.2d at 800 (noting that addressing merits of denial of motion to suppress in plea-bargain context advances public interest by encouraging "guilty pleas in cases where the only contested issue between the defendant and the State is a matter that may be raised by a pretrial motion"), we conclude that the unsuppressed evidence could have been used to inculpate him during a trial if Kennedy had not pleaded guilty as demonstrated by the State's use of the evidence during the sentencing hearing. Accordingly, we presume that the trial court's erroneous denial of Kennedy's motion to suppress influenced his decision to agree to the plea bargain. *See Kraft*, 762 S.W.2d at 614 (presuming that State used contested evidence "at least to some extent" as result of trial court's improper denial of motion to suppress).

For the reasons previously given, we sustain Kennedy's first and third issues on appeal.

## CONCLUSION

Having sustained Kennedy's first and third issues on appeal, we need not address Kennedy's second and fourth issues on appeal. In accordance with our previous determinations, we reverse the judgment of the district court and remand the case for a new trial. *See Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005) (reversing and remanding plea-bargain case to trial

30

court after concluding that trial court erred by denying motion to suppress); *Rowell v. State*, 14 S.W.3d 806, 810 (Tex. App.—Houston [1st Dist.] 2000) (same), *aff'd*, 66 S.W.3d 279 (Tex. Crim. App. 2001).

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson;
   Justice Patterson Not Participating

Reversed and Remanded

Filed:   March 11, 2011

Publish