# NO. 12-19-00021-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN MICHAEL LYDY,*<br>*APPELLANT* | § | *APPEAL FROM THE 369TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

John Michael Lydy appeals his conviction for possession with intent to deliver. In a single issue, Appellant contends the trial court erred in denying his requested jury instruction under Article 38.23 of the Texas Code of Criminal Procedure. We affirm.

## BACKGROUND

In November 2016, Detective Brent Dickson of the Cherokee County Sheriff's Department was approached by Alan Langston, the County's mental health deputy, about a potential controlled buy involving Appellant. Langston put Dickson in contact with Marcel Doran, who agreed to participate in the controlled buy as a confidential informant. Doran purchased methamphetamine from Appellant as part of the controlled buy. Dickson used the information obtained from the buy, along with his personal experience and other information, to write a probable cause affidavit to secure a search warrant. The magistrate issued the search warrant for Appellant's residence. Law enforcement officers located 9.52 grams of methamphetamine inside a building where they believed Appellant sold drugs.

Appellant was charged by indictment with possession of a controlled substance with intent to deliver. Prior to trial, Appellant's counsel filed a motion to suppress the evidence obtained during the execution of the search warrant. He argued that Dickson included false statements in

the probable cause affidavit which misled the magistrate. As a result, he contended the search warrant was invalid and all evidence obtained as a result was inadmissible. The trial court denied the motion.

At trial, Appellant pleaded "not guilty" and the matter proceeded to a jury trial. It resulted in a mistrial, and Appellant had a second trial. Following the conclusion of evidence in the second trial, Appellant's counsel requested an instruction under Article 38.23 of the Texas Code of Criminal Procedure and argued that a fact issue existed as to whether the evidence in Appellant's case was obtained illegally. The trial court denied the requested instruction. The jury found Appellant "guilty" and sentenced him to life in prison and a $10,000 fine. This appeal followed.

## CHARGE ERROR

In his sole issue, Appellant argues that the trial court erred by denying his request for a jury instruction under Article 38.23(a) of the Texas Code of Criminal Procedure. Specifically, he claims that the evidence at trial raised a fact issue regarding whether probable cause existed to support a warrant for the search of Appellant's residence and that the trial court was therefore required to include an Article 38.23(a) instruction in the jury charge.

### Standard of Review

The review of an alleged jury charge error in a criminal trial is a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id*. Then, if there is charge error, the court must determine whether there is sufficient harm to require reversal. *Id*. at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. *Id*. at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment when the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id*. "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the

2

contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The record must show that the defendant suffered actual harm, not merely theoretical harm. *Id.* at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

Generally, a trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The charge must include an instruction on any defensive theory raised by the evidence and properly requested by the defendant. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). But the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues because they are not "the law applicable to the case." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant who fails to preserve his request for a defensive instruction cannot complain about its omission on appeal because he procedurally defaulted his complaint. *Id.*

## Applicable Law

Article 38.23(a) provides that "[n]o evidence obtained by an officer ... in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused" at trial. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018). "When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, 'the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.'" *Robinson v. State,* 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (quoting TEX. CODE CRIM. PROC. ANN. art. 38.23(a)).

A defendant's right to the submission of an instruction under Article 38.23(a) "is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State,* 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To be entitled to a jury instruction under Article 38.23(a), the defendant must meet three requirements: "(1) [t]he evidence heard by the jury must raise an issue of fact; (2)[t]he evidence on that fact must be affirmatively contested; and (3) [t]hat contested factual issue must

be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id*. at 510. There must be a genuine dispute about a material issue of historical fact before an Article 38.23 instruction is warranted. *Id*. If there is no disputed issue of fact, the legality of the challenged conduct is determined by the trial court alone as a matter of law. *Id*. Further, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury. *Id*. The disputed fact issue must be essential to determining the lawfulness of the challenged conduct. *Id*. at 511. If the defendant successfully raises a disputed, material issue of fact regarding whether evidence was illegally obtained, an Article 38.23(a) instruction is mandatory and must be included in the jury charge. *Robinson,* 377 S.W.3d at 719.

In determining whether probable cause exists to support the issuance of a search warrant, the task of the issuing magistrate is to determine "whether, given all the circumstances *set forth in the affidavit before him,* including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983) (emphasis added); *Hennessy v. State,* 660 S.W.2d 87, 89 (Tex. Crim. App. [Panel Op.] 1983). The magistrate must determine whether probable cause exists based solely on the facts contained in the probable cause affidavit and any reasonable inferences drawn from those facts. *Kennedy v. State,* 338 S.W.3d 84, 91–92 (Tex. App.—Austin 2011, no pet.); *Borsari v. State,* 919 S.W.2d 913, 918 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

When a probable cause affidavit is based on information received from an informant, the informant's veracity, reliability, and basis of knowledge are relevant considerations in the determination of whether probable cause exists. *Gates,* 462 U.S. at 230, 233, 103 S. Ct. at 2328, 2330. These factors are not "entirely separate and independent requirements to be rigidly exacted in every case[.]" *Id.,* 462 U.S. at 230, 103 S. Ct. 2328. Rather, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether" probable cause exists, and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.,* 462 U.S. at 230, 233, 103 S. Ct. at 2328, 2329. Significantly, however, any showing of the informant's veracity, reliability, or basis of knowledge must be set forth in the probable cause affidavit, and the magistrate must analyze the existence and strength of those

factors, as well as their overall effect on the existence of probable cause, based solely on the information contained in the affidavit. *See id.,* 462 U.S. at 238, 103 S. Ct. at 2332.

Further, while the Fourth Amendment demands that there be a truthful showing of facts sufficient to establish probable cause, "[t]his does not mean 'truthful' in the sense that every fact recited in the [probable cause] affidavit is necessarily correct," since "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S. Ct. 2674, 2680-81, 57 L. Ed. 2d 667 (1978). Rather, the Fourth Amendment requires the probable cause affidavit to make a truthful showing "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.,* 438 U.S. at 165, 98 S. Ct. at 2681; *see also* ***McCray v. Illinois,*** 386 U.S. 300, 307, 87 S. Ct. 1056, 1060, 18 L. Ed. 2d 62 (1967) (explaining that when determining whether probable cause exists to support a search warrant, "the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told.") (internal citations omitted).

If a defendant establishes by a preponderance of the evidence that a warrant affidavit contains a false statement made intentionally, knowingly, or with reckless disregard for the truth, and if the statement was material to proving probable cause, the false material must be excised from the affidavit. *Franks*, 438 U.S. at 164–65, 98 S. Ct. at 2680-81; ***State v. Five Thousand Five Hundred Dollars in U.S. Currency***, 296 S.W.3d 696, 705 (Tex. App.—El Paso 2009, no pet.). If the remaining information in the affidavit is insufficient to establish probable cause, the search warrant should be voided and the evidence that was seized pursuant to the warrant should be excluded. ***Five Thousand Five Hundred Dollars***, 296 S.W.3d at 705 (citing ***Franks***, 438 U.S. at 155–56, 98 S. Ct. at 2676). A misstatement in the affidavit resulting from simple negligence or inadvertence will not render the warrant invalid. *See id.*

**Analysis**

Appellant argues that Detective Brent Dickson falsified information in the affidavit supporting the search warrant. Specifically, he contends Detective Dickson lied regarding the reliability of his confidential informant. He further argues that because certain items were not found during the search, their inclusion in the statement of items believed to be concealed on the property section of the affidavit renders them false.

Appellant urges that because Detective Martin Pepin did not inquire into the informant's history, Dickson must have provided inaccurate information on the affidavit. However, Detective Pepin did not write or swear to the probable cause affidavit. He testified that Detective Dickson asked him to assist with a "controlled narcotics purchase" and he agreed to do so without further questions.

The probable cause affidavit stated, in relevant part, the following information as grounds for issuance of a warrant:

a. Within the past seventy-two hours your Affiant has conducted a controlled narcotics purchase at the above-mentioned suspected place with the assistance of a Confidential Informant (S01607) that yielded a controlled substance, namely methamphetamine. The said Confidential Informant has provided information in the past that has been proven to be true and correct. The Confidential Informant will be referred to as CI for the rem[a]inder of this affidavit.

b. The CI conducted a controlled narcotics purchase from the suspected residence, from the suspected party, within the past seventy-two hours. The controlled narcotics purchase the said CI arrived at the suspected residence and completed the narcotics purchase. The controlled narcotics purchase yielded a gram or more of methamphetamine.

c. The CI provided information that the suspected party sells methamphetamine from the suspected place. Within the past seventy-two hours the Cl has observed an amount of methamphetamine within the said suspected residence.

The affidavit further provided the following information:

E. Your Affiant knows that persons involved in the possession, sale and distribution of controlled substances maintains documents, writings, lists of suppliers and customers, including names, addresses, and telephone numbers, other papers, notes, books and ledgers, that enable them to keep an accurate listing of persons with whom they are engaged in the illicit activities. Your Affiant also knows that persons involved in the above listed offenses keep financial records to enable them to keep current accounting of money expended and owed themselves by other persons. Your Affiant knows that these persons involved in the above listed offenses commonly keep quantities of controlled substances, and the money derived from their illicit activities inside residence in order to avoid detection by law enforcement officers. Your Affiant also knows that persons in the sell and distribution of controlled substances commonly keep weapons and other devises in close proximity to said controlled substances and inside of residence utilized to conceal said controlled substances, to protect the persons investment and controlled substances, and will commonly take weapons as payment in the sell and distribution of those controlled substances to individuals not having the means of paying for said controlled substances in US currency.

At trial, Detective Dickson's testimony was consistent with the allegations in the probable cause affidavit. The detective testified that he was contacted by Langston in November 2016 about

a potential undercover buy involving Appellant. Deputy Langston put him in contact with Doran. Detective Dickson stated that he had several telephone conversations with Doran in which Doran provided information "that appeared to be true and correct" regarding other drug dealers in the area. Doran disclosed that he had a prior conviction for burglary and claimed to wish to stop using drugs. When Dickson and Pepin met Doran prior to making the controlled buy, they filled out the confidential informant packet, searched Doran's person and vehicle, and provided him with money for the buy and recording devices. Doran, under the surveillance of Dickson and Pepin, then went to Appellant's residence. Doran went inside and left after approximately eighteen minutes. When the detectives subsequently met with Doran, they secured a "clear baggy containing a white, crystal rock substance believed to be methamphetamine," performed another search, and recovered the recording devices. Dickson then used that information to draft his probable cause affidavit to secure a search warrant.

In considering Detective Dickson's testimony, we fail to perceive an issue of material fact. Detective Dickson testified that Doran provided truthful information about other drug dealers prior to the controlled buy. In addition, Detective Dickson testified that he searched the informant both before and after the controlled buy to ensure any drugs actually came from Appellant. Therefore, Detective Dickson demonstrated Doran's reliability with regard to the controlled buy. *See **Blake v. State***, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (previous dealings with informant gave officers and magistrate basis for crediting informant's information).

Appellant further claims that a factual dispute exists because items listed in the probable cause affidavit were not ultimately recovered during the search. Specifically, Appellant points to the fact that neither ledgers nor books were found during the search. We disagree that this creates a fact issue. Detective Dickson stated in his affidavit that he believed those items might be concealed at Appellant's location and that, in his experience, those items are often recovered where drug trafficking occurs. He did not affirmatively state that such items would be found. It is axiomatic that not all searches recover all of the items law enforcement believes might be at a specific location. A probable cause affidavit need not be "truthful" in the sense that every fact recited in the affidavit is necessarily correct; "it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks,* 438 U.S. at 164-65, 98 S. Ct. at 2681. Detective Dickson's affidavit satisfies this standard.

Based on the foregoing, we determine that Detective Dickson's testimony does not demonstrate that he provided a false statement or that the any statements in the affidavit were made intentionally, knowingly, or with reckless disregard for their truth. *See **Shedden v. State***, 268 S.W.3d 717, 737-38 (Tex. App.—Corpus Christi 2008, pet. ref'd). As a result, the trial court did not err in refusing Appellant's requested instruction under Article 38.23. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 31, 2019

NO. 12-19-00021-CR

**JOHN MICHAEL LYDY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 369th District Court

of Cherokee County, Texas (Tr.Ct.No. 20277)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*